NELLIE NEAR, AS ADMINISTRATRIX, ETC., OF GEORGE F. NEAR, DECEASED, RESPONDENT, *v.* THE PRESIDENT, MANAGERS AND COMPANY OF THE DELAWARE AND HUDSON CANAL COMPANY, APPELLANT.

*Railroad company — its duty to keep its tracks in good repair — its liability to one of its servants injured by reason of its failure so to do.*

The defendant's road was carried across a marsh, partly upon embankments and partly upon trestle-work. The embankment upon the south side of the marsh was joined to the south end of the adjoining trestle-work by long timbers laid on and supported by old ties. The embankment and trestle-work adjoining this place settled from time to time, and as occasion required the defendant placed there a great quantity of old ties and other combustible materials. At the time of the accident, by which the plaintiff's intestate was killed, the marsh grass and this combustible material was very dry. On the day of the accident the marsh grass near the place in question was on fire, and subsequently the old ties and other materials took fire, but it was not shown whether they took fire from the burning grass or from coals dropped from the defendant's engines. The track over this burning material gave away while one of the defendant's trains, upon which the plaintiff's intestate was acting as a brakeman, was passing over it.

In an action to recover the damages sustained by reason of his death:

*Held,* that the question as to whether the accident was not occasioned by the defendant's negligence was properly left to the jury, and that a verdict in favor of the plaintiff would not be disturbed.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

*Henry Smith,* for the appellant.

*James W. Verbeck,* for the respondent.

BOCKES, J.:

The plaintiff's intestate was forward or head brakeman on the defendant's train, running between Green Island and Port Henry, and was killed while on duty because of the breaking down of the track, weakened and rendered unsafe by fire at a place called "Nigger Marsh" in the county of Washington. The plaintiff had a verdict of $5,000 damages.

The track, at the place where the accident causing the injury complained of occurred, crossed the marsh upon embankments on the north and south with trestle-work through the center. The embankment on the south side of the marsh was carried along for some distance until connection was made with the trestle-work. At the place where the south end of the trestle-work connected with the north end of the embankment, there were long timbers laid on and supported by old ties, one end fastened to the bent of the trestle and the other resting on the bank. The southmost bent of the trestle settled from time to time, as did also the end of the embankment, which extended for about 150 feet, and to keep up this embankment immediately south of the trestle, the defendant from time to time, as occasion required, piled in a great quantity of old ties, and left there other combustible material. This place where the embankment and the trestle connected was called a sink hole, and the grade was sought to be maintained there by the means above described. The marsh grass in the vicinity at the time of the accident was quite dry, as was also the combustible material employed to keep up the grade and to give support to the rails. On the day of the accident this marsh grass near by was on fire, and in the afternoon and early evening of that day the old ties and combustible material which gave support to the timbers under the rails were also on fire. It does not appear however (not with certainty, at least)

that the latter fire had its origin in the burning marsh grass. No one was stationed at or near the trestle to guard it against fire or otherwise. The train came along on its way from Port Henry south, reached this point about or near nine P. M.; the support of the rails at the sink hole had then become so weakened by the fire that the track gave way and the engine, on which the deceased was riding, was wrecked and the deceased killed.

The plaintiff claims, and such was the basis of recovery in theory, that the accident and consequent injury to the intestate were occasioned by the defendant's negligence in omitting to make the road-bed reasonably safe for use by their employes, and to maintain it in such reasonably safe condition.

The rule of liability here suggested is now so well settled and has become so familiar that there need be no citations of authority in its support. The question then resolves itself into one of fact on the proof submitted, and in examining this case it must be assumed that the burning of the combustible material of which the embankment was composed in part, rather that its insufficiency if left intact, was the proximate cause of injury. The defendants had the right to use combustible material in constructing the embankment as they had the right to use wood in constructing a trestle, but the use of such material would require increased care and diligence in maintaining the road-bed and track in a safe condition for use. Then, was the company directly responsible for the happening of the fire, or in not extinguishing it in time to prevent the injury? It is here sufficient, that there was evidence before the jury tending to establish the affirmative of this inquiry. On this question the following facts had bearing and significance: that the embankment was, in part, composed of combustible materials; those materials, instead of being of earth, as is customary in constructing railroad embankments, were of wood, as it turned out, to a dangerous extent; the materials were liable to be set on fire by the falling of burning cinders from passing trains, and in this case it is probable, if it be not directly and absolutely proven, that the fire had its origin in this way. Thus great vigilance was imposed as a duty upon the company to prevent the occurrence of such an accident. Was such duty observed? The facts and circumstances bearing on this inquiry were laid before the jury by the proof. Those were: the favor-

able opportunity for a fire because of the uncovered combustible materials under the track ; the exposure from the frequently passing engines ; the absence of all precaution ; the presence or absence of means to extinguish a fire, if kindled ; the time intervening between the commencement of the fire and the happening of the accident, with the rules or habits of watchfulness imposed by the company upon its servants, and whether these were sufficient to answer the requirements of due care and prudence in the case.   These facts and circumstances had bearing upon the question of negligence charged upon the company ; hence the case was for the jury on that subject.   Nor is it an answer here to say that the company had employed competent servants to look after the matter of complaint.   On this subject the case of *Davis* v. *Central Vermont Railroad Company* (55 Vermont, 84), a case involving the principles of law here invoked, is instructive, and attention is called to the elaborate opinion of the court by Ross, J.   There a recovery was sustained for an injury to the defendant's locomotive fireman, because, as was alleged, of negligence and want of due care in furnishing and maintaining a suitable and sufficient road-way for its trains ; and it was held that the negligence of the company's bridge-builder in constructing, and of the road-master in repairing the culvert, was attributable to the company, although they were ordinarily skillful and careful men in their several employments. (See, also, *Vosburg* v. *The L. S. & M. S. R. R. Co.*, 18 W. Dig., 300 ; *Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y., 521 ; *Fuller* v. *Jewett*, 80 id., 46 ; *Kain* v. *Smith*, Id., 458.)   It should also be noted that the company's servants were directed in their line of action in this case as regards care and watchfulness, or were habituated to settled practice of long standing, presumably known to the company itself, amounting to instructions from the company in that regard.   It may be added that if the servants of the company repeatedly and habitually omitted to exercise due watchfulness by patroling the road, or were guilty of other repeated and habitual negligences of duty, the question of their competency would become a subject of examination.   The doctrine of the law applicable to this case is well stated in *Toledo P. & W. R. Co.* v. *Conroy* (68 Ill., 560) as follows : " The duty owing by a railroad company to the public as well as to those in their employment is, that their road and

bridges and other appurtenances shall be constructed of the best material, having in view the business to be done upon it. In their construction they should equal those of the best roads doing an equal amount of business, and the utmost care and vigilance should be bestowed in keeping them in a safe condition. The law will not allow them to be out of repair an hour longer than the highest degree of diligence requires. And further it is their duty to keep a sufficient force at command, and of capacity sufficient to discover defects and apply the remedy. Neglecting to keep it in the best condition, if injury or loss occurs thereby, the companies will be liable, and they ought to be so liable. From this responsibility they cannot be relieved, except by showing that the defect was one which could not be discovered or remedied by any reasonable skill or foresight." Under this statement of the law the case was eminently one for the jury on the proof as to the question of the defendant's negligence.

It is urged that the negligence of the engineer, the intestate's co-servant, in running the train, caused or contributed to the injury. We cannot so adjudge as matter of law. Whether or not such was the cases was for the jury to determine. There was a sharp curve in the road near the place of the accident, and the opportunity for observation was obstructed until a near point to it was reached. It was also for a little time, and until the train had approached near to the danger, subject of doubt by the engineer whether the fire observed by him was under the track. The train was running on a down grade. We cannot say as matter of law that the engineer should be charged with negligence for not stopping the train before the place of the accident was reached.

It is also insisted that the plaintiff's intestate must be charged with contributory negligence — that he was riding on the engine instead of being at his customary place at the head of the line of cars next following. It seems, however, that it was not very unusual for the forward or head brakeman to ride on the engine. Besides the cars immediately following the engine were precipitated into the sink hole as well, or, as the witnesses expressed it, went down the trestle. Would the deceased have escaped injury had he been on the front car behind the engine instead of on the latter?

It was also for the jury to pass upon the question of contributory negligence presented by the evidence.

It is further insisted that the damages awarded by the jury are excessive. The verdict was for $5,000, the full amount allowed by law to be given in such cases. This subject is one of perplexity to the court. It is impossible to determine precisely what would be right in very many cases if not in all. It is, however, left by law with the jury, after giving proof of the circumstances surrounding the deceased (in a case where death ensues), his pecuniary condition, the number and situation of his family or immediate relatives if he have no family, his ability to acquire property, etc. It is not an easy matter to determine what the actual pecuniary loss to the widow and next of kin of a deceased may be. So it is not easy to determine whether the damages awarded in a given case are or are not excessive. Cases of death or of great bodily injury occasioned by negligence, differ widely in the means—the data—from which to estimate the damages, from those cases where a party is wrongfully ejected from a train. In the latter class of cases the loss and damages may be approximated with tolerable certainty. In this case we do not see our way clear to reverse the judgment because of the awarding of excessive damages.

We are of the opinion that the judgment must be affirmed, with costs.

LEARNED, P. J., and BOARDMAN, J., concurred.

Judgment and order affirmed, with costs.